LAURA E. DUFFY
United States Attorney
KYLE W. HOFFMAN
Assistant U.S. Attorney
State of California Bar No. 176095
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7651
Email: kyle.hoffman@usdoj.gov

Attorneys for Defendant United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE E. TAYLOR,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA (originally sued as "HIDTA Program"); CITY OF CHULA VISTA; RALPH PARTRIDGE; and DOES 1 TO 10 Inclusive,<br><br>Defendants. | Case No.: 15-cv-00586-BAS-BLM<br><br>DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>DATE: June 29, 2015<br>COURTROOM: 4B (Schwartz)<br>JUDGE: Hon. Cynthia Bashant<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTS ..... 1

A. LaNier's Original State Court Complaint ..... 1

B. Addition of HIDTA Program as Defendant, and Service on San Diego-Imperial HIDTA's Executive Chairman ..... 2

C. Taylor's Original State Court Complaint ..... 3

D. Addition of HIDTA Program as Defendant, and Provision of Complaint to Counsel for United States ..... 4

E. The HIDTA Program ..... 4

F. Removal of Both Complaints from State to Federal Court, and Motion to Dismiss LaNier's Case ..... 5

G. Both Taylor and LaNier File First Amended Complaints ..... 6

H. Both LaNier and Taylor Change the Target of Their Suits from the HIDTA Program to the San Diego-Imperial HIDTA – and Allege that the San Diego-Imperial HIDTA Is an "Unincorporated Association" ..... 7

III. ARGUMENT ..... 9

A. Plaintiff's Claims Against HIDTA – Whether the HIDTA Program Generally, or the San Diego-Imperial HIDTA in Particular – Must Be Dismissed for Lack of Subject Matter Jurisdiction, and for Failure to State a Claim ..... 9

1. Rule 12(b)(1) Standard ..... 9

2. Rule 12(b)(6) Standard ..... 10

3. Sovereign Immunity of the United States ..... 11

4. Congress Has Not Waived Sovereign Immunity with Respect to the HIDTA Program Generally ..... 12

5. Case Law Confirms that a HIDTA Cannot Be Sued ..... 13

6. Both LaNier and Taylor By their Actions Have Demonstrated that They Consider Their Claims as Claims Brought Under the FTCA – But Theses Same Actions Also Show that They Have Not Exhausted Administrative Remedies ..... 18

TABLE OF CONTENTS

Page

IV. CONCLUSION....................20

TABLE OF AUTHORITIES

**FEDERAL CASES** Page

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .... 10

Associate of Medical Colleges v. United States,
217 F.3d 770 (9th Cir. 2000) .... 9

Baker v. United States,
817 F.2d 560 (9th Cir. 1987) .... 11

Balistreri v. Pacifica Police Department,
901 F.2d 696 (9th Cir. 1990) .... 10

Brumbaugh v. Walters,
2008 WL 250594 (W.D.Mo. Jan. 29, 2008) .... 6

Citizens for Responsibility & Ethics in Washington v. Office of Admin.,
559 F. Supp. 2d 9 (D.D.C. 2008) .... 4, 7

Dean v. Barber,
951 F.2d 1210 (11th Cir. 1992) .... 14

Deutsch v. Federal Bureau of Prisons,
737 F. Supp. 261 (S.D.N.Y. 1990) .... 5, 11

Federal Housing Administration, Region Number 4 v. Burr,
309 U.S. 242 (1940) .... 12

Gillespie v. Civiletti,
629 F.2d 637 (9th Cir. 1980) .... 19

Jerves v. United States,
966 F.2d 517 (9th Cir. 1992) .... 19

Joyce v. North Metropolitan Task Force,
2011 WL 2669162 (D.Colo. July 07, 2011) .... 4

Kivalina Relocation v. Teck Cominco Alaska,
227 F.R.D. 523 (D. Alaska 2004) .... 14, 15

Kokkonen v. Guardian Life Insurance Co. of America,
511 U.S. 375 (1994) .... 10

Lane v. Pena,
518 U.S. 187 (1996) .... 12

Loeffler v. Frank,
486 U.S. 549 (1988) .... 12

McNeil v. United States,
508 U.S. 106 (1993) .... 19, 21

TABLE OF AUTHORITIES (Continued)

Page

McShane v. Ashcroft,
2004 WL 5561681 (S.D.Fla. Aug. 31, 2004) ....................5

Morales v. H.I.D.T.A.,
524 F. Supp. 2d 635 (2007) ....................15, 16, 18

Moss v. U.S. Secret Serv.,
572 F.3d 962 (9th Cir. 2009) ....................11

Orff v. United States,
358 F. 3d 1137 (9th Cir. 2004) aff'd, 545 U.S. 596 (2005) ....................12, 13

Riviere v. Director of the Puerto Rico/United States Virgin Islands High Intensity Drug Trafficking Areas Program,
2014 WL 1977186 (D. Virgin Islands) ....................18, 20

Roberts v. United States,
498 F.2d 520 (9th Cir. 1974) ....................11

Safe Air for Everyone v. Meyer,
373 F.3d 1035 (9th Cir. 2004) ....................10

Snell v. Cleveland,
316 F.3d 822 (9th Cir. 2002) ....................10

Sparrow v. USPS,
823 F. Supp. 252 (E.D.Cal.1993) ....................19

Sprewell v. Golden State Warriors,
266 F.3d 979 (9th Cir. 2001) ....................10

United States v. Barker,
2010 WL 4269404 (W.D.Ark., Oct. 14, 2010) ....................4

United States v. Mitchell,
445 U.S. 535 (1980) ....................11

**STATUTES AND REGULATIONS**

21 U.S.C. § 1501, et seq ....................8

21 U.S.C. § 1701 et seq ....................4

21 U.S.C. § 1706(i) ....................6

28 U.S.C. § 1346(b) ....................18

TABLE OF AUTHORITIES (Continued)

Page

28 U.S.C. § 1441 .......... 5
28 U.S.C. § 1442 .......... 5
28 U.S.C. §1442(a)(1) .......... 7
28 U.S.C. § 2671-2680 .......... 18
28 U.S.C. § 2675 .......... 19
28 U.S.C. § 2675(a) .......... 19

**RULES**

Fed.R.Civ.P. 12(b)(1) .......... 9, 20
Fed. R. Civ. P. 12(b)(6) .......... 11, 21
Fed. R. Civ. P. 12(h)(3) .......... 10
Fed. R. Civ. P. 17 .......... 13, 14
Fed. R. Civ. P 17(b) .......... 13, 16
Fed. R. Civ. P. 17(b)(1) .......... 9
Fed. R. Civ. P. 17(b)(2) .......... 9
Fed. R. Civ. P. 17(b)(3) .......... 13, 16, 18
Fed. R. Civ. P. 17(b)(3)(A) .......... 9
Fed. R. Civ. P. 17(b)(A) .......... 9
Fed. R. Evid. 201(b)(2) .......... 17
Fed. R. Evid. 201(c)(2) .......... 17

**MISCELLANEOUS**

Pub. L. 100-690, 102 Stat. 4181, enacted November 18, 1988, H.R. 5210 .......... 4, 12

## I. INTRODUCTION

Currently before this Court are two related cases, to which the United States is bringing simultaneous – and identical – motions to dismiss. The two cases – LaNier and Taylor – share overlapping facts, common defendants, and similar procedural histories. More important for these motions, they also share an underlying fatal flaw, at least insofar as one defendant – HIDTA – is concerned. That flaw is that HIDTA – both the HIDTA program in general, and the Southwest Border's ("SWB") San Diego-Imperial HIDTA in particular – is simply not an entity that can be sued.

For this basic reason, the United States respectfully moves this Court to dismiss Plaintiff's Complaint against the HIDTA program, the San Diego-Imperial HIDTA, and/or the United States for lack of subject matter jurisdiction, and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## II. FACTS

### A. LaNier's Original State Court Complaint

On June 17, 2014, plaintiff Tommy LaNier (LaNier) filed his action as Case No. 37-2014-00019774-CU-DF-CTL in the Superior Court of California, County of San Diego. See LaNier's Complaint (ECF-1 (attached as Exhibit A to Notice of Removal)).[1] In his original Complaint, LaNier named as defendants the City of Chula Vista, Kean McAdam, Ralph Partridge, and Does 1-25. See id.

According to that original Complaint, at the request of "the National Director of the High Intensity Drug Trafficking Area ('HIDTA') program," LaNier was employed by the City of Chula Vista "under a federal grant program relating to disrupting major marijuana trafficking . . . denominated the National Marijuana Initiative ('NMI') and issued by the federal office of National Drug Control Policy." Id. at ¶ 8.

[1] All references to the LaNier case, ECF-[number], refer to the electronically-filed documents in LaNier v. United States et al., Case No.: 15-cv-00360-BAS-BLM, unless otherwise indicated.

For his causes of action, LaNier sued for: (1) defamation against McAdam and City of Chula Vista; and (2) unlawful retaliation against City of Chula Vista, McAdam, and Partridge. Specifically, LaNier alleged that: (1) McAdam and the City of Chula Vista slandered and defamed him when they stated to San Diego HIDTA board members that LaNier had falsified travel vouchers; and (2) the City of Chula Vista, McAdam, and Partridge wrongfully retaliated against him, under California's Fair Employment and Housing Act, by terminating him from his job with the City of Chula Vista, after he complained of a hostile work environment confronting another employee. Id. at ¶¶ 17-24, 25-29.

That other employee just happened to be Valerie E. Taylor – the plaintiff in the second of the related cases that are the subject of these motions. See id. at ¶ 13.[2]

LaNier's Complaint sought at least $500,000 in damages against the defendants. Id. at ¶ 29.

**B. Addition of HIDTA Program as Defendant, and Service on San Diego-Imperial HIDTA's Executive Chairman**

On December 24, 2014, LaNier amended his state court Complaint to add the HIDTA program as a defendant. See id.[3] And on January 21, 2015, LaNier served Internal Revenue Service Criminal Investigation Assistant Special Agent in Charge Anthony Orlando with a copy of his Complaint and its Amendment. At the time, Orlando was the Chairman of the Executive Board of the San Diego-Imperial HIDTA.

---

[2] The parties in the LaNier case have since stipulated to dismiss, with prejudice, LaNier's unlawful retaliation claim against McAdam and Partridge. See Order Granting Joint Motion to Dismiss (ECF-6).

[3] LaNier's Amendment to Complaint stated that "Plaintiff(s), being ignorant of the true name of a defendant when the complaint in the above-named case was filed, and having designated defendant in the complaint by the fictitious name of Doe No.1 and having discovered the true name of the defendant to be **'High Intensity Drug Trafficking Area Program' aka 'HIDTA,'** a business organization, form unknown, amends the complaint by inserting such true name in the place of such fictitious name wherever it appears in the complaint, and by adding such name wherever the names of 'City of Chula Vista,' 'Kean McAdam,' and or 'Defendant(s)' appears in the complaint." Id. (emphasis added).

By amending his Complaint to name the HIDTA program as a defendant, and by serving his Complaint on the Chairman of the Executive Board of the San Diego-Imperial HIDTA, LaNier purported to bring the HIDTA program into the San Diego Superior Court litigation as a defendant.

**C. Taylor's Original State Court Complaint**

On August 26, 2014, plaintiff Valerie E. Taylor ("Taylor" or "Plaintiff") filed Case No. 37-2014-00028754-CU-OE-CTL in the Superior Court of California, County of San Diego. See Taylor's Complaint (ECF-1 (attached as Exhibit A to Notice of Removal)).[4] In her original Complaint, Taylor named as defendants the City of Chula Vista, Ralph Partridge, and Does 1-10. See id.

According to Taylor's original Complaint, "There exists in the United States a High Intensity Drug Trafficking Area Program ("HIDTA") under which three National Initiatives are established, with one being known as the National Marijuana Initiative ("NMI")." Id. at ¶ 7. Again according to Taylor's original Complaint, Taylor

> worked in the San Diego-Imperial regional HIDTA office continually since 2001. Initially, plaintiff worked as an employee of the federal government, retiring from that service on 12/28/2012, after which she immediately became an employee of CADFY (Californians for Drug Free Youth) still assigned to the national marijuana initiative HIDTA program doing exactly the same job. During this period of time, all employees working in the San Diego-Imperial HIDTA's downtown San Diego division, worked in the same office with coordination among all federal, state and local law enforcement agencies. The program is administered on a local level by defendant City . . . .

Id. at par. 7.

For her causes of action, Taylor sued for (1) sexual harassment/hostile work environment; (2) civil assault (against defendant Partridge); (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. See id. at ¶¶ 10-16, 17-20, 21-23, and 24-25.

---

[4] All references to the Taylor case, ECF-[number], refer to the electronically-filed documents in Taylor v. United States et al., Case No.: 15-cv-00586-BAS-BLM, unless otherwise indicated.

Taylor's Complaint and its Amendments sought at least $100,000 in damages against all defendants. See id. at ¶ 26.

**D. Addition of HIDTA Program as Defendant, and Provision of Complaint to Counsel for United States**

On March 3, 2015, Taylor amended her state court Complaint to add Californians for Drug Free Youth ("CADFY") as Doe No. 1, and the HIDTA program as Doe No. 2 defendants. See id.[5] And on March 11, 2015, Taylor's counsel provided a copy of Taylor's state court Complaint and its Amendments to counsel for the United States.

By amending her state court Complaint to name the HIDTA program as a defendant, and by providing her Complaint and its Amendments to counsel for the United States, Taylor purported to bring the HIDTA program into the California Superior Court litigation as a defendant.

**E. The HIDTA Program**

The HIDTA program was originally established by the Anti-Drug Abuse Act of 1988. See Pub.L. 100–690, 102 Stat. 4181, enacted November 18, 1988, H.R. 5210. The HIDTA program is administered by the Office of National Drug Control Policy ("ONDCP"), which in turn is an entity or office within the Executive Office of the President of the United States, i.e., the White House. See Citizens for Responsibility & Ethics in Washington v. Office of Admin., 559 F. Supp. 2d 9, 16 (D.D.C. 2008); Joyce v. North Metro Task Force, 2011 WL 2669162 at n.2 (D.Colo. July 07, 2011); United States v. Barker, 2010 WL 4269404 at n.6 (W.D.Ark., Oct. 14, 2010); see also 21 U.S.C. § 1701 et seq. (re-establishment of ONDCP and, at § 1706, the "High Intensity Drug Trafficking Areas Program"); 21 CFR §1401.2 (Office of National Drug Control Policy—

[5] As to the HIDTA program, Taylor's Amendment to Complaint stated that "Plaintiff(s), being ignorant of the true name of a defendant when the complaint in the above-named case was filed, and having designated defendant in the complaint by the fictitious name of Doe No. 2 and having discovered the true name of the defendant to be **'High Intensity Drug Trafficking Area Program' aka 'HIDTA,'** an agent/instrumentality of the United States, amends the complaint by inserting such true name in the place of such fictitious name wherever it appears in the complaint." Id. (emphasis added).

organization and functions); http://www.whitehouse.gov/ondcp/high-intensity-drug-trafficking-areas-program.[6]

**F. Removal of Both Complaints from State to Federal Court, and Motion to Dismiss LaNier's Case**

Because the HIDTA program is administered by an entity or office within the chief executive of the federal government (the ONDCP), and because both LaNier's and Taylor's Complaints sought hundreds of thousands of dollars in money damages from all defendants, including the HIDTA program—which award would have to come from the U.S. Treasury, see 21 U.S.C. § 1706(i) (Annual HIDTA Program budget submissions)—the United States considered a claim against the HIDTA program as a claim against the United States, as the real party in interest. See Deutsch v. Federal Bureau of Prisons, 737 F. Supp. 261, 265 (S.D.N.Y. 1990) (because any judgment against Federal Bureau of Prisons and its officers in their official capacities would be payable out of federal treasury, claims were against United States, for sovereign immunity analysis).

Therefore, on February 20, 2015, and March 16, 2015, respectively, pursuant to 28 United States Code §§ 1441 and 1442, the United States filed Notices of Removal, removing LaNier's and Taylor's actions from the Superior Court of California, County of San Diego, to this Court. See Notices of Removal (ECF-1 in both the LaNier and Taylor

[6] The HIDTA program provides assistance to federal, state, local, and tribal law enforcement agencies operating in areas determined to be critical drug-trafficking regions of the United States. The purpose of the HIDTA program is to reduce drug trafficking and production in the United States by increasing cooperation, intelligence-sharing, coordination, and resource use among federal, state, local, and tribal law enforcement agencies. There are currently 28 HIDTAs, including one HIDTA along the Southwest Border: one of the SWB's HIDTA offices is in the San Diego-Imperial Valley Region. See http://www.whitehouse.gov/ondcp/high-intensity-drug-trafficking-areas-program; see also http://www.whitehouse.gov/ondcp/hidta-points-of-contact.

"Notably, HIDTA does not employ personnel directly, but rather . . . is comprised of personnel contributed by the participating law enforcement agencies" including federal, state, and local agencies. McShane v. Ashcroft, 2004 WL 5561681 at *1 (S.D.Fla. Aug. 31, 2004).

cases).[7] On removal, LaNier's case was assigned to this Court, and Taylor's case was assigned to District Judge Sabraw.

On April 17, 2015, the United States moved to dismiss LaNier's Complaint against the HIDTA program. This motion was originally scheduled to be heard on June 15, 2015 before this Court. See Motion to Dismiss Plaintiff's Complaint in the LaNier case (ECF 7). The bases of the motion were straightforward: LaNier had not shown a waiver of the United States' sovereign immunity with respect to the HIDTA program, which was not a suable entity in any case; and as far as any Federal Tort Claims Act causes of action were concerned, LaNier had not exhausted administrative remedies prior to filing suit. Id.

Apparently in response to the United States' motion to dismiss LaNier's complaint, first Taylor and then LaNier chose to amend their Complaints.

**G. Both Taylor and LaNier File First Amended Complaints**

On April 27, 2015, the parties stipulated to Taylor's filing a First Amended Complaint. That First Amended Complaint was filed on April 29, 2014. See Joint Motion for Leave to File First Amended Complaint, and First Amended Complaint ("FAC"), in the Taylor case (ECF 8 and 10). In her FAC, Taylor made four claims for relief: (1) sexual harassment/hostile work environment under California's Fair Employment and Housing Act, via the Federal Tort Claims Act, against the United States; (2) assault against Partridge; (3) intentional infliction of emotional distress against Partridge; and (4) negligent infliction of emotional distress against Partridge. Thus, only one of Taylor's current claims is actually against the United States, or the HIDTA program, or the San Diego-Imperial HIDTA, and it is – purportedly – a cause of action under the FTCA.[8]

---

[7] 28 U.S.C. §1442(a)(1) provides for removal in cases commenced in a state court against the United States, its agencies, and officers. See also Brumbaugh v. Walters, 2008 WL 250594 at *1 (W.D.Mo. Jan. 29, 2008) (finding that state case filed against director of ONDCP was properly removable to federal court: "This is the sort of case to which 28 U.S.C. § 1442(a)(1) was intended to apply.")

[8] Pursuant to an order issued at the time of Taylor filing her First Amended Complaint, the United States was to plead or otherwise respond to that Complaint thirty

LaNier followed Taylor in amending his Complaint. See First Amended Complaint ("FAC"), in the LaNier case (ECF 9). In that FAC, LaNier put forth four claims for relief: (1) defamation against McAdam and the City of Chula Vista; (2) retaliation under California's Fair Employment and Housing Act against the United States; (3) retaliation under Title VII against the United States; and (4) a federal tort claim against the United States.

**H. Both LaNier and Taylor Change the Target of Their Suits from the HIDTA Program to the San Diego-Imperial HIDTA – and Allege that the San Diego-Imperial HIDTA Is an "Unincorporated Association"**

More important for these Motions to Dismiss, both LaNier and Taylor changed their allegations regarding who they were actually suing: instead of the HIDTA program generally, they shifted their focus to the San Diego-Imperial HIDTA in particular.

In their FACs, both LaNier and Taylor describe the HIDTA program and the San Diego-Imperial HIDTA in this way:

> HIDTA is a program run by the United States Office of National Drug Control Policy ("ONDCP"), which in turn is a component of the Executive Branch of the United States Government. (See, e.g., 21 U.S.C. § 1501, et seq., Citizens for Responsibility and Ethics in Washington v. Office of Administration, etc., 559 F.Supp.2d 9, 16 (D.D.C. 2008).) The HIDTA program is an instrumentality of the USA and provides assistance to federal, state and local enforcement agencies operating in areas determined to be critical drug trafficking regions of the United States. The purpose of the HIDTA program is to reduce drug trafficking and production in the United States by increasing cooperation, intelligence sharing, coordination and resource use among federal, state and local law enforcement agencies. HIDTA's function in various geographical regions of the USA, one of which is the San Diego-Imperial Valley region. HIDTA does not employ personnel directly, but rather is comprised of personnel contributed by participating law enforcement agencies. Federal funds are utilized and provided to

---

days after service. See Order Granting Joint Motion and Stipulation in the Taylor case (ECF 9).

In addition, on April 17, 2015, the United States filed a Notice of Related Case in the Taylor case, informing District Judge Sabraw that the Taylor case was related to the earlier-filed, low-numbered LaNier case before this district court. See Notice of Related Case(s) in the Taylor case (ECF 6). The Taylor case was low-numbered to this Court on April 30, 2015. See Order of Transfer Pursuant to Low Number Rule in the Taylor case (ECF 12).

> "grantees" who hire personnel to work as a joint task force tasked with implementing and accomplishing the goals of the HIDTA program. Two of the major grantees of the San Diego-Imperial HIDTA are the City of Chula Vista and CADFY, each with hired personnel jointly working in a common San Diego work office environment.
>
> The San Diego-Imperial HIDTA is overseen by a HIDTA Executive Board consisting of local, state and federal law enforcement officials who meet monthly. At all times material hereto, Kean McAdam, a payroll employee of the City of Chula Vista, acted as the Director of the San Diego-Imperial HIDTA, and Defendant, Ralph Partridge, also a payroll employee of the City of Chula Vista, acted as the Deputy Director of the San Diego-Imperial HIDTA. Under written HIDTA policy guidelines applicable to all grantees (including City of Chula Vista and CADFY), City of Chula Vista and CADFY are responsible for hiring employees, issuing contracts, managing property, and expending HIDTA program funds as necessary to carry out the grant activities under the general review of the HIDTA Executive Board. The HIDTA grantees, City of Chula Vista and CADFY, are responsible for providing day to day administrative, financial and program management for the operations of the HIDTA.

<u>See</u> Taylor's FAC (ECF 10), ¶¶ 8 and 9; <u>see also</u> LaNier's FAC (ECF 9), ¶¶ 8 and 9.[9]

In their FACs, both LaNier and Taylor make the same allegations concerning why the San Diego-Imperial HIDTA is an entity capable of being sued. Their theory: the San Diego-Imperial HIDTA is an "unincorporated association," hence suable under Fed. R. Civ. P. 17(b)(3)(A).

> The HIDTA meets the definition of an unincorporated association because its members share a common purpose and share a common name ("HIDTA"); the HIDTA has its own letterhead which lists all of its Executive Board Members; the HIDTA has a Director (McAdam) and a Deputy Director (Partridge) who had control of the work office in which plaintiff worked; the work office signage stated "HIDTA" and not the name of any other government member or entity; and the claim which plaintiff is suing on arose directly out of the operation of the HIDTA office.

---

[9] Notably, in keeping with this general outline of how the HIDTA program works, both LaNier and Taylor acknowledge that they were not employees of the HIDTA program, or of the San Diego-Imperial HIDTA. Instead, LaNier was an employee of the City of Chula Vista, and Taylor was an employee of CADFY. <u>See</u> LaNier's FAC (ECF 9), ¶ 11 ("LaNier and McAdam were payroll employees of the City of Chula Vista."), ¶ 15 ("plaintiff was forced to resign as an employee of the City of Chula Vista."), ¶ 18, Exh. D-3 ("Claimant was notified that he must resign or retire as an employee of the City of Chula Vista."); Taylor's FAC (ECF 10), ¶ 10 ("CADFY . . . employed . . . plaintiff Valerie Taylor"), ¶ 12 (plaintiff "became an employee of CADFY"), ¶ 15 ("plaintiff was a CADFY payroll employee working in the HIDTA joint task force office.").

See Taylor's FAC (ECF 10), ¶ 9; see also LaNier's FAC (ECF 9), ¶ 9.

Most succinctly, they allege: "The HIDTA has capacity to sue and be sued under Rule 17(b)(A)[10] of the Federal Rules of Civil Procedure as an unincorporated association which has violated substantive rights of plaintiff under U.S. Law (Title VII)." See Taylor's FAC (ECF 10), ¶ 6; Lanier's FAC (ECF 9), ¶ 6.

Contrary to LaNier and Taylor, however, neither the HIDTA program generally nor the San Diego-Imperial HIDTA in particular is a suable entity, as an "unincorporated association or otherwise. And so their complaints against HIDTA must be dismissed.

## III. ARGUMENT

### A. Plaintiff's Claims Against HIDTA – Whether the HIDTA Program Generally, or the San Diego-Imperial HIDTA in Particular – Must Be Dismissed for Lack of Subject Matter Jurisdiction, and for Failure to State a Claim

#### 1. Rule 12(b)(1) Standard

Rule 12(b) (1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. See Fed.R.Civ.P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. Assoc. of Med. Colls. v. United States, 217 F.3d 770, 778–779 (9th Cir. 2000). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be

---

[10] This reference to Fed. R. Civ. P. 17(b)(A) must be a typographical error, and must refer instead to Fed. R. Civ. P. 17(b)(3)(A).

In particular, Fed. R. Civ. P. 17(b)(3) provides that—in the case of all parties (1) other than individuals not acting as representatives, see Fed. R. Civ. P. 17(b)(1), or (2) corporations, see Fed. R. Civ. P. 17(b)(2)—the capacity to sue and be sued shall generally be defined by the law of the state where the court is located. See Fed. R. Civ. P. 17(b)(3). But Fed. R. Civ. P. 17(b)(3)(A) further provides that "a partnership or other unincorporated association with no such capacity [to sue or be sued under the law of the state where the court is located] may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." See Fed. R. Civ. P. 17(b)(3)(A).

It is this last provision – the right to sue an "unincorporated association" to enforce a substantive right existing under U.S. law – upon which LaNier and Taylor explicitly rely.

expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. Safe Air For Everyone, 373 F.3d at 1039. Issues regarding subject matter jurisdiction may be raised at any time, even on appeal, by motion or sua sponte by the court. Fed. R. Civ. P. 12(h)(3); Snell v. Cleveland, 316 F.3d 822, 826–27 (9th Cir. 2002).

**2. Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). But a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Here, Plaintiff's First Amended Complaint (or FAC) must be dismissed for lack of subject matter jurisdiction, and for failure to state a claim.

**3. Sovereign Immunity of the United States**

To start, both LaNier's and Taylor's FACs must be dismissed for failure to show a waiver of the United States' sovereign immunity, on the face of their complaints, and so for lack of subject matter jurisdiction.

First, it seems beyond question that a program (1) administered by the Office of National Drug Control Policy, itself an entity or office within the Executive Office of the President (2) created and authorized by Congress, and (3) funded by federal taxpayer dollars, is a program of the federal government, or the United States. See https://www.whitehouse.gov/ondcp/authorization-language (listing and linking to legislation and executive orders authorizing ONDCP and HIDTA program); https://www.whitehouse.gov/ondcp/annual-accounting-report (listing and linking to annual budgets for ONDCP, including HIDTA program). And so LaNier's and Taylor's FACs, insofar as they seek money damages from a federal government program, are effectively suits against the United States, for purposes of the doctrine of sovereign immunity. See Deutsch, 737 F. Supp. at 265 (because any judgment against Federal Bureau of Prisons and its officers in their official capacities would be payable out of federal treasury, claims were against United States, for sovereign immunity analysis).

But it is also beyond question that the United States, as a sovereign, is immune from suit. United States v. Mitchell, 445 U.S. 535, 538 (1980). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." Roberts v. United States, 498 F.2d 520, 525 (9th Cir. 1974). The United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction." Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987). A

waiver of sovereign immunity in any statute "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996).

"A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." Baker, 817 F.2d at 562. Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction. Orff v. United States, 358 F.3d 1137, 1142 (9th Cir. 2004) aff'd, 545 U.S. 596 (2005).

Here, both LaNier's and Taylor's FACs must be dismissed for lack of subject matter jurisdiction, because they fail on their face to show an "unequivocal waiver of immunity." See Baker, 817 F.2d at 562.

**4. Congress Has Not Waived Sovereign Immunity with Respect to the HIDTA Program Generally**

While there are exceptions to the United States' sovereign immunity from suit, LaNier and Taylor have failed to allege any. Moreover, there are no applicable exceptions to the United States' sovereign immunity from suit with respect to the HIDTA program generally.

For example, Congress has expressly chosen to waive the sovereign immunity of certain federal entities, by including "sue and be sued" provisions in their authorizing or enabling legislation. See, e.g., Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 245 (1940) (Federal Housing Administration); Loeffler v. Frank, 486 U.S. 549, 554 (1988) (Postal Service).

But here, Congress has not waived the United States' sovereign immunity with respect to the HIDTA program generally, under any of ONDCP's or HIDTA's authorizing or enabling statutes. And so – unsurprisingly – neither LaNier nor Taylor has alleged any such waiver.

Specifically, the Anti-Drug Abuse Act of 1988, the statute originally authorizing the ONDCP and creating HIDTAs, does not contain a "sue and be sued" clause regarding the HIDTA program. See Pub. L. 100–690, 102 Stat. 4181, enacted November 18, 1988,

H.R. 5210. Nor does any of the legislation that re-authorizes the ONDCP or the HIDTA program contain such a "sue and be sued" provision regarding the HIDTA program. See https://www.whitehouse.gov/ondcp/authorization-language (listing and linking to legislation and executive orders authorizing and reauthorizing ONDCP and the HIDTA program – on surveying these, no "sue and be sued" provision).

Because Congress has not chosen to waive the United States' sovereign immunity with respect to the HIDTA program generally, and because LaNier and Taylor have failed to allege any grounds for a waiver of the United States' sovereign immunity from suit with respect to that program, their claims against the HIDTA program must dismissed for lack of jurisdiction. See Orff, 358 F.3d at 1142.

**5. Case Law Confirms that a HIDTA Cannot Be Sued**

In their First Amended Complaints, however, LaNier and Taylor focus not so much on the HIDTA program generally, as on the San Diego-Imperial HIDTA in particular. LaNier and Taylor both allege that the San Diego Imperial HIDTA is an "unincorporated association" that they are suing to enforce substantive rights existing under United States law (Title VII). See LaNier's FAC (ECF 9), ¶ 6; Taylor's FAC (ECF 10), ¶ 6. By this means, they hope to render the San Diego-Imperial HIDTA capable of being sued, under Fed. R. Civ. P. 17(b)(3)(A), even though the HIDTA program generally is immune from suit because of the United States' sovereign immunity.

There are at least two flaws with this approach. Each of them is fatal. First, governmental groups are generally not considered "unincorporated associations" under Rule 17, as labor unions might be for instance. As one appellate court has written:

> Nothing in the language of Rule 17(b) or in the early case law that led to the adoption of Rule 17 . . . warrants an extension of Rule 17(b) to government units. Also, nothing in the advisory committee notes to Rule 17 or in the case law interpreting and applying Rule 17 has ever extended this 'unincorporated assocation' exception to government units, subdivisions or agencies. We conclude, therefore, that [a county sheriff's department] is not an 'unincorporated association' for purposes of Rule 17.

Dean v. Barber, 951 F.2d 1210, 1215 n.4 (11th Cir. 1992).[11]

Even more, the "unincorporated association" exception of Rule 17 is particularly inapplicable to what are essentially hybrids, as, for example, committees formed by representatives from different governmental entities. Thus, one district court in this Circuit has held that an intergovernmental committee formed by an Alaskan city, village and borough to advise the city and village on matters related to the village's relocation was not an "unincorporated association" under federal law. The reasons: the committee's continued existence was not determined by the individuals on the committee, qua individuals. Nor even was the individuals' presence on the committee determined by the individuals themselves. Instead, who served on the committee, how it was financed, who determined its functions and scope of authority, who controlled its continued existence, who bore ultimate responsibility for its actions – all this was determined by the governmental entities behind the committee, that is, by the city, village and borough who created the committee in the first place, and not by the individuals themselves. See Kivalina Relocation v. Teck Cominco Alaska, 227 F.R.D. 523, 526-27 (D. Alaska 2004). As a consequence, the district court reasoned, the committee could not be an "unincorporated association" under federal law.

So too here, the San Diego Imperial HIDTA is a cooperative effort of state, local, and federal law enforcement agencies, not an "unincorporated association" under federal law. Taylor's and LaNier's own FACs, for instance, state that the "San Diego-Imperial HIDTA is overseen by a HIDTA Executive Board consisting of local, state and federal law enforcement officials who meet monthly." See Taylor's FAC (ECF 10), ¶ 9 (emphasis added); see also LaNier's FAC (ECF 9), ¶ 9. Further, LaNier's FAC also attaches a letter with the San Diego-Imperial HIDTA letterhead – which in turn lists the heads of Border Patrol, US Immigration and Customs Enforcement, the US Attorney's Office, the FBI, the Coast Guard, the IRS, DEA, and the US Marshals, on the federal

[11] The Dean opinion further cited persuasive authority that Rule 17(b) applied "only to private entities that are well-established representatives of groups of people, such as labor organizations." Id.

side, along with Chiefs of Police of the cities of Chula Vista, Imperial, and San Diego, the District Attorney and Sheriff for San Diego, the District Attorney and Sheriff for Imperial County, and the Special Agent in Charge of the CA Department of Justice, on the state and local side. See LaNier's FAC (ECF 9), Exhibit B-1. There is no indication that these people are members of the HIDTA board in their individual capacities. Rather, they are representatives of their federal, state and local law enforcement agencies, serving on the HIDTA's executive board as required by federal law. See 21 U.S.C. Section 1706(e), "Organization of High Intensity Drug Trafficking Areas," esp. Section 1706(e)(3), "Board Representation."

For all these reasons, the San Diego-Imperial HIDTA is not an "unincorporated association" – as for instance a labor union might be. It is in essence the same as the intergovernmental committee at issue in Kivalina Relocation, a committee which was expressly held not to be an "unincorporated association" under federal law.

Further, the only court to have considered whether a local HIDTA was an "unincorporated association" or otherwise suable under Fed. R. Civ. P. 17 has already held exactly to the contrary of LaNier's and Taylor's position. In Morales v. H.I.D.T.A., 524 F. Supp. 2d 635 (2007), the plaintiffs brought a negligence suit against the Puerto Rico/USVI H.I.D.T.A. and other defendants. In the district court's published opinion, the court dismissed the plaintiff's complaint against the Virgin Islands. Morales, 524 F. Supp. 2d at 638. And in an unpublished order, the district court dismissed the Puerto Rico/USVI H.I.D.T.A. as a defendant, finding that it did not have the capacity to sue or be sued under Fed. R. Civ. P. 17. See Declaration of Kyle W. Hoffman, Exh. A (Order Dismissing Action as to Defendant High Intensity Drug Trafficking Area, Morales v. H.I.D.T.A., Case No. 03-cv-00019-HB-GWC (D.V.I. Oct. 30, 2007), ECF No. 161-1, at 6-8).

First, the district court in Morales found no authority that the Puerto Rico/USVI H.I.D.T.A.—"a cooperative effort of federal, state, and local law enforcement agencies"—had the capacity to sue or be sued under Virgin Islands law, as would be

required by Fed. R. Civ. P. 17(b)(3). Id. at 7. Second, the district court explicitly rejected the notion that the Puerto Rico/USVI H.I.D.T.A. was otherwise suable as an "unincorporated association" under Rule 17(b). Id. at 8. As the district court concluded:

> the 'unincorporated association' exception to Rule 17(b) is inapplicable. There is no indication from the text of the Rule, the case law leading to its adoption, the advisory committee notes, or the case law since its adoption that the Rule 17(b) exception applies to local government subdivisions, units, departments or agencies. [citations omitted] Likewise, we see no reason to expand the exception to a hybrid like PR/USVI H.I.D.T.A.

Id. at 8 (emphasis added).

Here, therefore, even if the present Motion were adjudged under Federal Rule of Civil Procedure 17, and not purely on the basis of sovereign immunity, the same result would follow: both the HIDTA program generally, and the San Diego-Imperial HIDTA in particular, would have to be dismissed as defendants, because neither is an entity that has the capacity to sue or be sued. The HIDTA program generally is not an individual; it is not a corporation; it is not an "unincorporated association"; it is not even a federal agency. Instead, it is a program—and, to top it off, a program of the federal government, which cannot be sued unless it consents to be sued in any case, under principles of sovereign immunity. Similarly, the San Diego-Imperial HIDTA in particular is not an individual, a corporation, or even an "unincorporated association" under federal law. Instead, it is the local manifestation of the larger federal government program, a "cooperative effort of federal, state, and local law enforcement," to quote Morales. Id. at 7. Bluntly put, neither the HIDTA program nor the San Diego-Imperial HIDTA is a suable entity, under Rule 17 or federal law.

Finally, even the documents (partially) attached to LaNier's own complaint buttress this conclusion: a HIDTA is not its own legal entity, and so cannot sue or be sued as LaNier and Taylor would wish. See LaNier's FAC, Exhibit A (ECF 9).[12] Thus,

---

[12] Only certain pages of this document are attached as Exhibit A to LaNier's FAC (ECF 9). The full 95-page document is available at http://www.nhac.org/hidta_guidance/guidance2012.pdf. Because LaNier himself has attached pages from this document to his FAC, this Court can consider that entire

the 2012 HIDTA Program and Budget Guidance, issued by the Executive Office of the President, Office of National Drug Control Policy, July 5, 2012, describes a HIDTA as follows:

> A HIDTA is a coalition of Federal, state, local, and tribal law enforcement agencies from a specific geographic area that have joined together to apply for and to receive Federal grants to facilitate certain specific drug control goals. The HIDTA as an entity does not possess its own law enforcement authority. The Federal, state, local, and tribal law enforcement agencies that form the HIDTA each have their own law enforcement authority under Federal, state, local, and tribal law. When Federal officers and local police jointly conduct a criminal investigation funded by the HIDTA grant, they are acting under the law enforcement authority vested in each of them by their specific agencies. A HIDTA is not a Federal agency. A HIDTA is not an agent of ONDCP, the Executive Office of the President (EOP), or any other Federal agency. Each individual HIDTA participant has a responsibility not to act in a way that implies or suggests that he/she is an agent or otherwise acting on behalf of ONDCP, the EOP, or any other Federal agency based upon his/her involvement in HIDTA activities.

See HIDTA Program and Budget Guidance, issued by the Executive Office of the President, Office of National Drug Control Policy, July 5, 2012, at Pages 2-3 to 2-4, Section 2.3.3, "Nature of the HIDTA" (emphases added).[13]

Later, this document states:

> HIDTAs and their Executive Boards are not considered legal entities under Federal law and generally lack the authority to enter into contracts, hire employees, or obligate Federal funds. HIDTA Executive Boards are responsible for selecting one or more grantees that, among other things, provide financial management services. Those grantees will hire employees, issue contracts, manage property, and expend HIDTA program funds as necessary to carry out the grant activities approved by the Executive Board.

Id. at Page 3-3, Section 3.4.5, "Selection of HIDTA Grantees" (emphasis added).

In short, LaNier and Taylor have cited no authority, and the United States is aware of none, that permits either (1) the HIDTA program generally or (2) a local HIDTA in

---

document in the Motion to Dismiss his complaint. In addition, the document is judicially noticeable under Fed. R. Evid. 201(b)(2), and the United States requests that this Court take notice of the document under Fed. R. Evid. 201(c)(2).

[13] At Page IV-9, this document also defines the terms "HIDTA" and "HIDTA Program," distinguishing their meanings consistent with the United States' usage in these Motions. In particular, this document states that "The term 'HIDTA program' means the program funded by ONDCP at the national level," while "The term HIDTA, without the words 'program' or 'regions' following it, means either: the designated area . . . or the coordinating organization and the initiatives that are funded by the HIDTA . . . ."

particular, to be sued in a case such as this.[14] Indeed, even the document LaNier himself (partially) attached to his FAC indicates the exact contrary. Put simply: "HIDTAs and their Executive Boards are not considered legal entities under Federal law." Id.

**6. Both LaNier and Taylor By Their Actions Have Demonstrated that They Consider Their Claims as Claims Brought Under the FTCA – But These Same Actions Also Show that They Have Not Exhausted Administrative Remedies**

Another way the United States has consented to waive its sovereign immunity is for claims under the Federal Tort Claims Act. Specifically, the Federal Tort Claims Act (FTCA), Title VI of the Legislative Reorganization Act of 1946, codified at 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671-2680, provides a limited waiver of the federal government's sovereign immunity. The FTCA applies when the United States' employees are negligent or cause harm while acting within the scope of their employment in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Here, however, to the extent that LaNier and Taylor bring their claims under the FTCA's limited waiver of sovereign immunity, those claims must still be dismissed for lack of subject matter jurisdiction. The reason: their FACs fail on their face to allege

[14] It is telling that neither the HIDTA program in general nor local HIDTAs in particular have been named as parties to garden-variety employment or tort lawsuits, such as is the case here – even though HIDTAs were established by legislation originally passed in 1988. Thus, a Westlaw search of the "allcases" database limited to titles (and therefore party names) that include either "'high intensity drug' or HIDTA or H.I.D.T.A" reveals only two cases: Morales, and Riviere v. Director of the Puerto Rico/United States Virgin Islands High Intensity Drug Trafficking Areas Program, 2014 WL 1977186 (D. Virgin Islands). As discussed, Morales expressly holds both that the local HIDTA (1) was not an entity capable of being sued, and (2) was not an "unincorporated association." And Riviere was (1) a suit brought under FOIA, which has its own statutory procedures and scheme, including its own definition of what constitutes an "agency," and (2) was ordered to be dismissed on other grounds entirely – failure to pay filing fees – and so cannot stand for any proposition about whether a local HIDTA can properly be sued in any case.

These results support the view that the HIDTA program generally, and local HIDTAs in particular, are incapable of being sued, because of the United States' sovereign immunity, or because they are not entities capable of being sued, or both.

that they exhausted their administrative remedies under the FTCA prior to filing suit. See McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980) ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be affirmatively alleged in the complaint "); see also 28 U.S.C. Section 2675.

A jurisdictional prerequisite to bringing a lawsuit in federal court against the United States in tort is the filing of an administrative claim with the appropriate federal agency. Jerves v. United States, 966 F.2d 517, 518–19 (9th Cir. 1992). Once the administrative claim has been filed, the federal agency has six months to act. See 28 U.S.C. § 2675(a). The claimant can file a civil suit under the FTCA only after the agency either denies the claim in writing or fails to make a final disposition of the claim within six months after it is filed. Id. "'The statutory procedure is clear.' A tort claimant may not commence proceedings in court against the United States without first filing . . . [a] claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." Jerves, 966 F.2d at 519.

A lawsuit filed prior to the exhaustion of a claimant's administrative claim, however, is premature and must be dismissed. McNeil, 508 U.S. at 113. The premature complaint cannot be cured by belatedly presenting an FTCA claim to the agency after suit has been filed. See id. at 110-13. As a general rule, a premature complaint also cannot be cured through amendment of an existing complaint. See e.g., Sparrow v. USPS, 823 F. Supp. 252, 254–55 (E.D.Cal.1993). Instead the claimant must file a new suit, after the presentation of an administrative claim and either (i) that claim's denial or (ii) the expiration of the six-month statutory period afforded by 28 U.S.C. Section 2675(a).

Here, both LaNier's and Taylor's FACs fail to show that they presented an administrative claim to the appropriate federal agency and that either the agency: (1)

denied their administrative claims; or (2) failed to make a decision within six months. In fact, the record of these litigations shows quite otherwise. LaNier first filed his Complaint in state court in June 2014; then he added the HIDTA program as a defendant in December 2014; then he saw his Complaint removed to federal court in February 2015 – and only in April 2015 did he belatedly file an administrative claim. See LaNier's FAC (ECF 9), ¶ 20 and Exh. E (copy of LaNier's Federal Claim for Damages, Standard Form 95, dated Apr. 9, 2015). Similarly, Taylor first filed her Complaint in state court in August 2014; then she added the HIDTA program as a defendant and saw her Complaint removed to federal court in March 2015 – and only in April 2015 did she belatedly file an administrative claim. See Taylor's FAC (ECF 10), ¶ 25 and Exh. B (copy of Taylor's Federal Claim for Damages, Standard Form 95, dated Apr. 6, 2015). In short, LaNier's and Taylor's own actions show both that (1) they are attempting to allege claims under the FTCA, and (2) they failed to exhaust administrative remedies prior to filing suit.

For this basic reason, to the extent that LaNier and Taylor are alleging causes of action under the Federal Tort Claims Act – as LaNier does in his Fourth Claim for Relief, and Taylor does in her First Claim for Relief (the only one against the United States, sued as the San Diego-Imperial HIDTA) – those claims must be dismissed.

## IV. CONCLUSION

For all the above reasons, the United States respectfully requests that the Court dismiss Plaintiff's claims against the HIDTA program, the San Diego-Imperial HIDTA, and/or the United States, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

///

///

In addition, the United States requests that the Court dismiss Plaintiff's Federal Tort Claim causes of action against the HIDTA program, the San Diego-Imperial HIDTA, and/or the United States, for failure to state a claim under the FTCA and Federal Rule of Civil Procedure 12(b)(6).

DATED: May 28, 2015

LAURA E. DUFFY
United States Attorney

/s/ Kyle W. Hoffman

KYLE W. HOFFMAN
Assistant U.S. Attorney

Attorneys for Defendant
United States of America