1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    TOMMY LANIER,                              Case No. 15-cv-360-BAS(BLM)

                              Plaintiff,        **ORDER:**
12
                                                **(1) GRANTING UNITED STATES**
13          v.                                  **OF AMERICA'S MOTION TO**
                                                **DISMISS; AND**
      UNITED STATES OF AMERICA, *et*
14    *al.*,                                    **(2) DENYING CITY OF CHULA**
                                                **VISTA'S MOTION TO**
15                            Defendants.       **DISMISS**

16

17    VALERIE E. TAYLOR,                         Case No. 15-cv-586-BAS(BLM)

18                            Plaintiff,        **ORDER:**

19          v.                                  **(1) GRANTING UNITED STATES**
                                                **OF AMERICA'S MOTION TO**
20    UNITED STATES OF AMERICA, *et*            **DISMISS; AND**
      *al.*,
21                                              **(2) GRANTING CITY OF CHULA**
                              Defendants.       **VISTA'S MOTION TO**
22                                              **DISMISS**

23

24          Plaintiffs Tommy LaNier and Valerie E. Taylor separately filed tort actions in

25    the San Diego Superior Court arising from their employment.[1]   In both actions,

26

27    ───────────────
            [1] Mr. LaNier's action is titled *LaNier v. United States*, No. 15-cv-360-BAS(BLM) ("LaNier
28    Action"), and Ms. Taylor's action is titled *Taylor v. United States*, No. 15-cv-586-BAS(BLM)
      ("Taylor Action").

Plaintiffs amended their respective complaints to add the High Intensity Drug Trafficking Area ("HIDTA") program as a defendant.  On the basis that "HIDTA is a program administered by an office of the executive branch of the federal government" and thus a "claim against HIDTA is a claim against the United States," Defendant United States of America ("Government") removed both actions to federal court.[2]  The parties agree that both actions were properly removed to federal court pursuant to 28 U.S.C. §§ 1441(a), 1442, and 1331.  The Government now moves to dismiss all claims against HIDTA in both the LaNier and Taylor Actions.  Defendant City of Chula Vista ("City" or "CCV") also separately moves to dismiss all claims against it in both actions.  All of the motions are opposed.

The Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the Government's motions to dismiss in both the LaNier and Taylor Actions, **DENIES** the City of Chula Vista's motion to dismiss in the LaNier Action, **GRANTS** the City's motion to dismiss in the Taylor Action, and **REMANDS** the Taylor Action to the San Diego Superior Court.

## I.   BACKGROUND

### A.   HIDTA

HIDTA is a federal program organized under the Office of National Drug Control Policy ("ONDCP").  21 U.S.C. § 1706(a)(1).  Its purpose is to "reduce drug

---

[2] The Government explains that "[b]ecause the HIDTA program is administered by an entity or office within the chief executive of the federal government (the ONDCP)" and because any award against the HIDTA program would have to come from the U.S. Treasury, the Government "considered a claim against the HIDTA program as a claim against the United States, as a real party in interest."  (Gov't's Mot. 5:5-14 (citing *Deutsch v. Fed. Bureau of Prisons*, 737 F. Supp. 261, 265 (S.D.N.Y. 1990) for the proposition that "because any judgment against Federal Bureau of Prisons and its officers in their official capacities would be payable out of federal treasury, claims were against United States, for sovereign immunity analysis").)  Consequently, references to the Government, United States, HIDTA, and the HIDTA program are used interchangeably for the purposes of this order.

1   trafficking and drug production in the United States" by: (1) "facilitating cooperation
2   among Federal, State, local, and tribal law enforcement agencies to share information
3   and implement coordinated enforcement activities"; (2) "enhancing law enforcement
4   intelligence sharing among Federal, State, local, and tribal law enforcement
5   agencies"; (3) "providing reliable law enforcement intelligence to law enforcement
6   agencies needed to design effective enforcement strategies and operations"; and (4)
7   "supporting coordinated law enforcement strategies which maximize use of available
8   resources to reduce the supply of illegal drugs in designated areas and in the United
9   States as a whole." *Id.* § 1706(a)(2).

10      To achieve its goal, the Director of National Drug Control Policy "may
11   designate any specified area of the United States as a high intensity drug trafficking
12   area." 21 U.S.C. §§ 1701(2), 1706(b)(1).  After making a designation, the Director
13   may: (1) "obligate such sums as are appropriated for the [HIDTA] Program"; (2)
14   "direct the temporary reassignment of Federal personnel to such area, subject to the
15   approval of the head of the department or agency that employs such personnel"; (3)
16   "take any other action authorized . . . to provide increased Federal assistance to those
17   areas"; and (4) "coordinate activities . . . with State, local, and tribal officials." *Id.* §
18   1706(b)(2).

19      In accordance with § 1706, "each high intensity drug trafficking area shall be
20   governed by an Executive Board," which "shall designate a chairman, vice chairman,
21   and any other officers to the Executive Board that it determines are necessary." 21
22   U.S.C. § 1706(e)(1).  The Executive Board's responsibilities include "providing
23   direction and oversight in establishing and achieving the goals" and "managing the
24   funds" of the high intensity drug trafficking area.  The Executive Board also reviews
25   and approves "all funding proposals consistent with the overall objective of the high
26   intensity drug trafficking area" and "all reports to the Director on the activities of the
27   high intensity drug trafficking area." *Id.* § 1706(e)(2).
28   //

1    The statute authorizing the HIDTA program is also clear that it creates no

2 agency relationship.  21 U.S.C. § 1706(e)(4).  "The eligibility requirements of [§

3 1706] are intended to ensure the responsible use of Federal funds."  *Id.*  "Nothing in

4 this section is intended to create an agency relationship between individual high

5 intensity drug trafficking areas and the Federal Government."  *Id.*

6

7    **B.    Mr. LaNier's and Ms. Taylor's Employment[3]**

8    According to the FACs, Defendants City of Chula Vista and Californians for

9 Drug Free Youth, Inc. ("CADFY") are both HIDTA grantees "responsible for hiring

10 employees, issuing contracts, managing property, and expending HIDTA program

11 funds as necessary to carry out the grant activities under the general review of the

12 HIDTA Executive Board."  (LaNier FAC ¶¶ 9-10; Taylor FAC ¶¶ 9-10.)  Both

13 plaintiffs allege Defendant Kean McAdam is "a payroll employee of the City of

14 Chula Vista, [who] acted as the Director of the San Diego-Imperial HIDTA" and

15 Defendant Ralph Partridge is also "a payroll employee of the City of Chula Vista . .

16 . [who] acted as the Deputy Director of the San Diego-Imperial HIDTA."[4]  (LaNier

17 FAC ¶ 9; Taylor FAC ¶ 9.)

18    Mr. LaNier alleges that he, too, was a "payroll employee[] of the City of Chula

19 Vista" with the job classification of "Director of NMI"[5] for the San Diego-Imperial

20 County regional HIDTA program.  (LaNier FAC ¶ 11.)  He further alleges that his

21 position was "specifically approved by the City Council of the City of Chula Vista."

22 (*Id.*)  Ms. Taylor, however, alleges that she was "a CADFY payroll employee

23 working in the HIDTA joint task force office."  (Taylor FAC ¶¶ 12, 15.)  According

24

25    [3] After the LaNier and Taylor Actions were removed to federal court, both plaintiffs
26 amended their complaints.  The operative complaints in both actions are their respective First
Amended Complaints ("FAC").  Mr. LaNier's FAC will be referred to as "LaNier FAC" and Ms.
27 Taylor's will be referred to as "Taylor FAC" throughout this order.

28    [4] Mr. McAdam is only named as a defendant in the LaNier Action, and Mr. Partridge is only
named as a defendant in the Taylor Action.  (LaNier FAC ¶ 9; Taylor ¶ 9.)
    [5] NMI stands for National Marijuana Initiative.  (LaNier FAC ¶ 11.)

1  to the allegations in both FACs, Mr. McAdam and Mr. Partridge were Mr. LaNier's
2  and Ms. Taylor's superiors.

3          Over the course of several years, Ms. Taylor alleges that she was the target of
4  consistent sexual/gender-based harassment from Mr. Partridge, who also created a
5  hostile work environment.  (Taylor FAC. ¶ 13.)  Ms. Taylor recounts numerous
6  alleged instances of such conduct by Mr. Partridge in her FAC.  (*See id.* ¶ 14(a)-(f).)
7  Ms. Taylor alleges that she reported Mr. Partridge's conduct to her direct supervisor,
8  Mr. LaNier.  (*Id.* ¶ 13.)  Mr. LaNier then allegedly reported Mr. Partridge's sexually
9  harassing and hostile conduct to Mr. McAdam.  (LaNier FAC ¶ 16.)  But the only
10  response he received from Mr. McAdam is that Mr. McAdam would "talk to Ralph
11  [Partridge]."  (*Id.* ¶¶ 14, 17.)  Thereafter, Mr. LaNier was accused of having "falsified
12  travel expenses."  (*Id.* ¶ 13.)

13          In September 2013, Mr. McAdam informed Mr. LaNier of the accusation,
14  which was related to a business trip with his team to San Juan, Puerto Rico.  (LaNier
15  FAC ¶ 13.)  The trip was planned "at the specific request of ONDCP . . . to make an
16  assessment of the current marijuana impacts which the program was having."  (*Id.*)
17  "[T]wo officers above [Mr. LaNier's] level"—one of whom was Mr. McAdam—
18  allegedly "expressly signed off and authorized" the travel request for the Puerto Rico
19  business trip.  (*Id.*)  When Mr. LaNier pressed Mr. McAdam for an explanation about
20  why he was being questioned about the travel to Puerto Rico, Mr. McAdam allegedly
21  responded that he would "talk to Ralph" about it.  (*Id.* ¶ 14.)  Mr. McAdam allegedly
22  did not provide or state anything more specific.  (*Id.*)

23          On October 16, 2013, Mr. LaNier alleges that he was "forced to resign as an
24  employee of the City of Chula Vista."  (LaNier FAC ¶ 15.)  Mr. McAdam allegedly
25  "stated to members of the Executive Board which oversaw the San Diego HIDTA
26  operation that [Mr.] LaNier had lied about/falsified the necessity for and/or expenses
27  relating to the Puerto Rico trip."  (*Id.*)  Mr. LaNier's last day at work for the City was
28  October 22, 2013.  (*Id.*)  Ms. Taylor was terminated from her employment with

CADFY in April 2013 after Mr. Partridge had allegedly told the HIDTA Financial Management Committee that Ms. Taylor "didn't do anything" and that "her job needed to be cut and replaced by a $40,000 a year lesser secretary position."  (Taylor FAC ¶ 19.)

### C.    Procedural History

Mr. LaNier and Ms. Taylor separately filed actions in the San Diego Superior Court.  The Government removed both actions to federal court.  Following removal, Mr. LaNier and Ms. Taylor amended their respective complaints, with the operative complaints in both actions being their respective FACs.

In Mr. LaNier's FAC, he asserts four claims for relief: (1) Defamation against Mr. McAdam and CCV; (2) Retaliation under the California Fair Employment and Housing Act ("FEHA") against the Government, CCV, and CADFY; (3) Retaliation under Title VII, 42 U.S.C. § 2000(e)-3(a), against the Government, CCV, and CADFY; and (4) a claim under the Federal Torts Claims Act ("FTCA") against the Government.

Ms. Taylor also asserts four claims for relief in her FAC: (1) Sexual Harassment / Hostile Work Environment under California Civil Code § 3294 against the Government, CCV, and CADFY; (2) Civil Assault against Mr. Partridge; (3) Intentional Infliction of Emotional Distress against Mr. Partridge; and (4) Negligent Infliction of Emotional Distress against Mr. Partridge.

CADFY filed answers in both the LaNier and Taylor Actions, and the Government and CCV separately filed motions to dismiss in both actions.

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The court

must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.  Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds).  Moreover, the court may consider the full text of those documents,

even when the complaint quotes only selected portions.  *Id.*  It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III.   UNITED STATES' MOTIONS TO DISMISS

In its motion to dismiss, the Government essentially argues that Mr. LaNier and Ms. Taylor both fail to meet certain jurisdictional prerequisites to bring suit against the HIDTA program.  Specifically, the Government contends that: (1) the HIDTA program is protected by sovereign immunity; (2) Mr. LaNier and Ms. Taylor both have failed to exhaust their respective administrative remedies as required by the FTCA to bring suit against the HIDTA program; and (3) the HIDTA program is not a suable "unincorporated association" under Federal Rule of Civil Procedure 17(b)(3)(A).  The Court agrees with all three of the Government's contentions.

### A.   Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Before a federal court exercises jurisdiction over any suit against the United States, there must be "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted); *see also United States v. Park Lace Assocs., Ltd.*, 563 F.3d 907, 923-24 (9th Cir. 2009) (discussing the relationship between sovereign immunity and subject matter jurisdiction).  "A party bringing a cause of action against the federal government bears the burden of demonstrating an unequivocal waiver of immunity."  *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986).

//

//

"The government's waiver of sovereign immunity cannot be implied, but 'must be unequivocally expressed in statutory text.'" *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192.  Furthermore, the United States Supreme Court has emphasized that a "statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; "the 'unequivocal expression' of elimination of sovereign immunity" required is an "expression in statutory text." *Id.* (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992)).

Neither Mr. LaNier nor Ms. Taylor identify an "unequivocally expressed" waiver of sovereign immunity in any statutory text.  *See Jachetta*, 653 F.3d at 903. Both plaintiffs fail to identify a waiver of sovereign immunity not only in their respective complaints, but also in their respective briefs opposing the Government's motion.  This failure to identify a waiver of sovereign immunity is unsurprising because there simply is no language contained in the statutory text of 21 U.S.C. § 1706—which is the statute authorizing HIDTA—waiving sovereign immunity.  *See* 21 U.S.C. § 1706.

Mr. LaNier and Ms. Taylor both creatively argue that the Government indeed waived sovereign immunity under the doctrine of judicial estoppel when "HIDTA filed an answer to [the] plaintiff's second amended complaint" in *Strobel v. United States Drug Enforcement Administration*, No. 2:11CV00053 (N.D. Ind. 2011), where HIDTA purportedly made "key admissions" that HIDTA was a suable entity. (LaNier Opp'n 4:3-27; Taylor Opp'n 3:22-4:20.)  Even if HIDTA indeed made such admissions in *Strobel*, which the Court is not convinced it did, ultimately such an admission does not matter.  United States Supreme Court precedent is clear that any

1   waiver of sovereign immunity must be expressly written in the statutory text.[6]  *See*

2   *Lane*, 518 U.S. at 192.  It even rejected the possibility that a waiver of sovereign

3   immunity could be obtained through the statute's legislative history.  *Id.*  If the

4   Supreme Court rejected language potentially suggesting waiver of sovereign

5   immunity directly from the legislative body drafting the statute, which is the entity

6   with actual authority to waive immunity, it naturally follows that an assertion made

7   regarding waiver in the answer to a complaint in a lawsuit could not waive sovereign

8   immunity for HIDTA as a whole.  *See id.*

9      Accordingly, the Court rejects Mr. LaNier's and Ms. Taylor's judicial-estoppel

10  argument, and finds that HIDTA, insofar as it is even a suable entity, which is not

11  clear that it is, has not waived sovereign immunity.  *See Lane*, 518 U.S. at 192;

12  *Jachetta*, 653 F.3d at 903.  Despite HIDTA's sovereign-immunity protection, Mr.

13  LaNier and Ms. Taylor argue that a waiver exists through the FTCA, which the

14  Government correctly recognizes grants a limited waiver of sovereign immunity in

15  certain circumstances.

16

17  **B.      Federal Torts Claim Act / Exhaustion of Administrative Remedies**

18     The Federal Torts Claim Act waives sovereign immunity of the United States

19  for certain torts committed by federal employees.  *Fed. Deposit Ins. Corp. v. Meyer*,

20  510 U.S. 471, 477 (1994) (citing 28 U.S.C. § 1346(b)).  The FTCA provides that

21  district courts have exclusive jurisdiction of civil actions against the United States

22  for money damages "for injury or loss of property, or personal injury or death caused

23  by the negligent or wrongful act or omission of any employee" of the federal

24  government while acting within the scope of his office or employment.  28 U.S.C. §

25  1346(b).   The FTCA "defines Government employees to include officers and

26

27       [6] Supreme Court precedent also suggests that the United States Congress is the sole entity—
as opposed to Department of Justice, another federal agency, or counsel for that agency—that

28  retains the authority to waive sovereign immunity.  *See Lane*, 518 U.S. at 192.  Mr. LaNier and Ms.
Taylor do not provide any legal authority to suggest otherwise.

1  employees of 'any federal agency' but excludes 'any contractor with the United

2  States.'"  *United States v. Orleans*, 425 U.S. 807, 813-14 (1976) (citing 28 U.S.C. §

3  2671).

4  The United States is the only proper defendant in a suit brought pursuant to the

5  FTCA.  *Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1988); *Kennedy*

6  *v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998).  "A claim against [a federal

7  agency] in its own name is not a claim against the United States."  *Kennedy*, 145 F.3d

8  at 1078.  An agency is not a proper defendant under the FTCA.  *Craft*, 157 F.3d at

9  706.

10  Furthermore, "[t]he FTCA bars claimants from bringing suit in federal court

11  until they have exhausted their administrative remedies."  *McNeil v. United States*,

12  508 U.S. 106, 113 (1993).  Before filing a lawsuit against a federal agency, the

13  plaintiff must first present the claim to the federal agency, and the agency must deny

14  the claim.  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013); *see* 28

15  U.S.C. § 2675(a).  "The timely filing of an administrative claim is a jurisdictional

16  prerequisite to the bringing of a suit under the FTCA, and, as such, should be

17  affirmatively alleged in the complaint."  *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th

18  Cir. 1980).  "A district court may dismiss a complaint for failure to allege this

19  jurisdictional prerequisite."  *Id.*

20  HIDTA is not an agency.  Section 1706, which authorizes HIDTA, explicitly

21  states as much.  Specifically, § 1706(e)(4), which is a subsection titled "No agency

22  relationship," states that "[t]he eligibility requirements of [§ 1706] are intended to

23  ensure the responsible use of Federal funds.  *Nothing in this section is intended to*

24  *create an agency relationship between individual high intensity drug trafficking*

25  *areas and the Federal Government*."  21 U.S.C. § 1706(e)(4) (emphasis added).

26  Given that the waiver of immunity only applies against Government employees of

27  federal agencies, insofar as HIDTA having any employees, which is not clear that it

28  does, sovereign immunity is not waived through the FTCA because it is not a federal

1  agency.  *See Orleans*, 425 U.S. at 813-14 (citing 28 U.S.C. § 2671).

2        And because HIDTA is not a federal agency, there is no apparent means of

3  satisfying the FTCA's administrative-exhaustion requirement, which requires a

4  plaintiff to "first present[] the claim to the appropriate Federal agency."  *See* 28

5  U.S.C. § 2675(a).  Therefore, though Mr. LaNier and Ms. Taylor both allege that they

6  have exhausted their respective administrative remedies, it simply is not possible that

7  they could have first presented their respective claims to the appropriate *federal*

8  *agency*.  Even though HIDTA is protected by sovereign immunity and has not waived

9  that immunity under the FTCA, Mr. LaNier and Ms. Taylor assert a third theory

10 under Federal Rule of Civil Procedure 17(b)(3) to establish that HIDTA is indeed a

11 suable entity.

12

13        **C.     Unincorporated Association under Rule 17(b)(3)(A)**

14        Capacity to sue in federal court is governed by Federal Rule of Civil Procedure

15 17(b).  A "partnership or other unincorporated association" that lacks the capacity to

16 sue under the law of the state in which the court is located "may sue or be sued in its

17 common name to enforce a substantive right existing under the United States

18 Constitution or laws."  Fed. R. Civ. P. 17(b)(3)(A).

19        An "unincorporated association" is "a voluntary group of persons, without a

20 charter, formed by mutual consent for the purpose of promoting a common

21 objective."  *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir.

22 1996) (quoting *Local 4076, United Steelworkers of Am. v. United Steelworkers of*

23 *Am., AFL-CIO*, 327 F. Supp. 1400, 1403 (W.D. Pa. 1971)).  However, "nothing in

24 the advisory committee notes of Rule 17 or in the case law interpreting and applying

25 Rule 17 has ever extended this 'unincorporated association' exception to government

26 units, subdivisions or agencies."  *Dean v. Barber*, 951 F.2d 1210, 1214-15 n.4 (11th

27 Cir. 1992).  "[O]nly private parties can be unincorporated associations within the

28 meaning of Rule 17(b)(3)(A)."  *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 842

1  (N.D. Ohio 2011) (citing *Dean*, 951 F.2d at 1215 n.4); *see also Erie Human Relations*

2  *Comm'n v. Tullio*, 493 F.2d 371, 376 (3d Cir. 1974) (Adams, J., concurring)

3  (suggesting that under Rule 17(b), only private entities may be considered

4  "unincorporated associations"); *Miller v. City of Philadelphia*, No. CIV. A. 96-3578,

5  1997 WL 476352, at *6 (E.D. Pa. Aug. 19, 1997) (finding that Philadelphia

6  Department of Human Services was a governmental agency and therefore did not

7  have the capacity to be sued as an "unincorporated association" under Rule 17(b)).

8      HIDTA is federal program authorized by 21 U.S.C. § 1706. It is not a private

9  party. There is ample case law that this Court finds persuasive that Rule 17(b)(3)'s

10 "unincorporated association" exception only applies to private parties. *See Dean*,

11 951 F.2d at 1214-15 n.4; *Rush*, 771 F. Supp. 2d at 842. Accordingly, HIDTA, as a

12 non-private party, is not an "unincorporated association," and by extension, not a

13 suable party within the meaning of Rule 17(b)(3)(A). *See id.*

14

15 **IV.   CITY OF CHULA VISTA'S MOTIONS TO DISMISS**

16     The City of Chula Vista concentrates its motions to dismiss on the existence

17 of an employer-employee relationship between the relevant parties. The City argues

18 that Mr. LaNier and Ms. Taylor both fail to adequately allege that the City is their

19 employer. Additionally, the City argues Mr. LaNier fails to adequately allege Mr.

20 McAdam is a City employee. With respect the Mr. LaNier, the City argues that Mr.

21 LaNier fails to adequately allege an employer-employee relationship within the

22 meanings of California Government Code § 815.2, FEHA, and Title VII; and with

23 respect to Ms. Taylor, the City asserts the same but only under FEHA.

24     In both the LaNier and Taylor Actions, the City of Chula Vista requests

25 judicial notice of the HIDTA Program Policy and Budget Guidance ("Guidance"),

26 dated July 5, 2012. Mr. LaNier and Ms. Taylor also attach the Guidance to their

27 respective amended complaints. The Court will consider the full text of the Guidance

28 as a document identified in the operative complaints whose authenticity is not

questioned, and not as a judicially noticed document.  *See Fecht*, 70 F.3d at 1080 n.1.

## A.   HIDTA Program Policy and Budget Guidance

In addition to 21 U.S.C. § 1706—the statute authorizing HIDTA—the Guidance provides important insight into the HIDTA program's relationship with its grantees and other individuals involved in the program.  "A HIDTA is a coalition of Federal, state, local, and tribal law enforcement agencies from a specific geographic area that have joined together to apply for and to receive Federal grants to facilitate certain specific drug control goals."  (Guidance § 2.3.3.)  Reiterating what is already clear from the text of the authorizing statute, the Guidance bluntly states that "[a] HIDTA is not a Federal agency."  (*Id.*)  It continues:

> A HIDTA is not an agent of ONDCP, the Executive Office of the President (EOP), or any other Federal agency.  Each individual HIDTA participant has a responsibility not to act in a way that implies or suggests that he/she is an agent or otherwise acting on behalf of ONDCP, the EOP, or any other Federal agency based upon his/her involvement in HIDTA activities.

(*Id.*)

"The HIDTA program is a regional program, locally managed, and tied to a national mission."  (Guidance § 2.3.5.)  "HIDTA-funded initiatives are collocated and jointly-staffed law enforcement task forces led by a local, state, tribal, or Federal agency."  (*Id.*)

Most relevant to the issues currently before the Court, the Guidance states that "HIDTAs and their Executive Boards are not considered legal entities under Federal law and generally lack the authority to enter into contracts, hire employees, or obligate federal funds."  (Guidance § 3.4.5.)  HIDTA Executive Boards are responsible for selecting grantees that "provide financial management services."  (*Id.*)  "Those grantees will hire employees, issue contracts, manage property, and expend HIDTA program funds as necessary to carry out the grant activities approved

by the Executive Board." (*Id.*) "The use of those funds is subject to the respective grantee's policies and procedures pertaining to property management, employment, procurement, and financial management." (*Id.*) And the "Executive Board is responsible for selecting grantees whose established policies and procedures are consistent with Federal grantee regulatory requirements." (*Id.*)

Each Executive Board selects an individual to serve as the HIDTA Director. (Guidance § 3.4.7.) *"That individual will be an employee or contractor of a grantee* and will be subject to all employment, contracting, and other conditions established by that grantee." (*Id.* (emphasis added).) Oversight and removal of a HIDTA Director may only be done "in consultation with the grantee." (Guidance §§ 3.4.7, 3.4.8.)

"The HIDTA Director is responsible for the successful implementation of the Executive Board's Strategy and policies." (Guidance § 3.5.1.) The principal responsibilities of the HIDTA Director include: (1) "Provid[ing] day-to-day administrative, financial, and program management for the operations of the HIDTA"; (2) "Facilitat[ing] and encourag[ing] the development of innovative approaches to drug law enforcement"; (3) "Ensur[ing] that HIDTA initiatives are in compliance with HIDTA program requirements"; and (4) "Advis[ing] the Executive Board concerning the performance of HIDTA initiatives." (*Id.*)

"Grantees may use HIDTA funds to hire employees or to enter into contracts with individuals to manage and staff the HIDTA." (Guidance § 6.8.1.)

## B.     California Government Code § 815.2 (Defamation Claim)

California Government Code § 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee[.]" An "employee" is defined to include "an officer, judicial officer as defined in Section 327 of the Elections Code,

1   employee, or servant, whether or not compensated, but does not include an
2   independent contractor." Cal. Gov't Code § 810.2. According to some California
3   courts, that definition of "employee" has evolved to become "[a] person employed to
4   perform services in the affairs of another and who with respect to the physical
5   conduct in the performance of the services is subject to the other's control or right to
6   control." *See Townsend v. California*, 191 Cal. App. 3d 1530, 1534-35 (1987)
7   (internal quotation marks omitted).

8      With respect to the defamation claim against the City of Chula Vista, Mr.
9   LaNier must adequately allege that Mr. McAdam was the City's employee or servant
10   within the meaning of California Government Code § 815.2. The City argues that,
11   "pertaining to the operations of the HIDTA," it had "no control or right to control
12   Director McAdam," and thus, Mr. McAdam was not the City's employee or servant.
13   (CCV's *LaNier* Mot. 8:22-9:19.) Instead, the City suggests that the HIDTA
14   Executive Board possessed such authority over Mr. McAdam, thereby excluding the
15   possibility that the City was Mr. McAdam's employer. (*See id.*) The City's position
16   lacks merit.

17      There is no dispute that Mr. McAdam had certain obligations to the HIDTA
18   program. (*See* Guidance § 3.5.1.) But there is also no dispute regarding Mr. LaNier's
19   allegations that the City of Chula Vista was, at all relevant times, a HIDTA grantee,
20   and that Mr. McAdam was indeed on the City's payroll as an employee. (*See* LaNier
21   FAC ¶¶ 9-10.) That said, there are no facts before the Court supporting the notion
22   that a HIDTA Director's obligations are owed to the HIDTA program or Executive
23   Board at the exclusion of the grantee or vice versa. In suggesting otherwise, the City
24   presents a false dichotomy unsupported by law and the record. Though Mr. LaNier
25   persuasively argues that an individual such as Mr. McAdam may be a part of a joint
26   employer relationship, the record before the Court strongly suggests that Mr.
27   McAdam is solely an employee of the City of Chula Vista.
28   //

1    The starting point in this determination is the fact that the City of Chula Vista

2    is a HIDTA grantee.  From there, the Court can reasonably infer from the Guidance—

3    which Mr. LaNier *and* the City both submit for the Court's consideration—that Mr.

4    McAdam is the City's employee and not HIDTA's.  As recounted above, grantees

5    are tasked with "*hir[ing] employees*, issu[ing] contracts, manag[ing] property, and

6    expend[ing] HIDTA program funds as necessary to carry out the grant activities

7    approved by the Executive Board."  (*See* Guidance § 3.4.5 (emphasis added).)  The

8    Guidance also explicitly states that "[t]he use of [HIDTA] funds is subject to the

9    respective grantee's policies and procedures pertaining to . . . employment[.]"  (*Id.*)

10   Provisions in the Guidance make it clear that HIDTA is not an employer.  Insofar as

11   any employees being hired to promote HIDTA program goals, that is left to the

12   HIDTA grantees, such as the City of Chula Vista and CADFY.

13   Perhaps the HIDTA Director though is not an ordinary employee.  Provisions

14   in the Guidance could be interpreted to support that idea.  The Guidance, for example,

15   identifies specific obligations for HIDTA Directors, such as "[p]rovid[ing] day-to-

16   day administrative, financial, and program management for the operations of the

17   HIDTA," among others.  (*See* Guidance § 3.5.1.)  However, dispelling the notion that

18   a HIDTA Director may have special employee status, the Guidance expressly states

19   that the individual selected to be a HIDTA Director "will be an employee or

20   contractor of a grantee and will be subject to all employment, contracting, and other

21   conditions established by that grantee," and any oversight or removal decision related

22   to the HIDTA Director may only be accomplished "in consultation with the grantee."

23   (*See id.* §§ 3.4.7, 3.4.8.)  In short, HIDTA, the HIDTA program, and the Executive

24   Board do not hire or manage any employees; it is the grantee that possesses the

25   authority to hire and manage employees.  (*See id.* §§ 3.5.1, 3.5.7, 3.5.8.)

26   //

27   //

28   //

15cv360 / 15cv586

1        Applied to the circumstances in this case, Mr. LaNier makes an adequate

2  showing at this time under Rule 12(b)(6), that Mr. McAdam, a HIDTA Director, is

3  an employee of the City of Chula Vista and not HIDTA, the HIDTA program, or the

4  HIDTA Executive Board.  Necessarily, the Court rejects the City's contention that it

5  had no control of Mr. McAdam and that the Executive Board somehow possessed

6  authority as an employer over Mr. McAdam.  Consequently, the Court **DENIES** the

7  City's motion to dismiss Mr. LaNier's defamation claim.

8

9     **B.**    **Title VII and FEHA**

10        Title VII and FEHA make it unlawful for an employer to retaliate against an

11  employee for opposing or participating in an investigation into practices forbidden

12  by these laws—e.g., discrimination based on race, sex, religion, etc.  *See* 42 U.S.C.

13  § 2000e-3(a); Cal. Gov't Code § 12940(h).  Under FEHA, only an "employer" is

14  liable for retaliation against an employee.  *Jones v. Lodge at Torrey Pines P'ship*, 42

15  Cal. 4th 1158, 1173 (2008) (citing Cal. Gov't Code § 12940(h)).  Similarly, "there

16  must be some connection with an employment relationship for Title VII protections

17  to apply." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980).

18        Continuing a similar line of reasoning regarding Mr. McAdam's employment

19  status, the City of Chula Vista argues that Mr. LaNier fails to allege that the City was

20  his employer within the meaning of Title VII and FEHA, suggesting once again that

21  the HIDTA Executive Board is Mr. LaNier's employer.  (CCV's *LaNier* Mot. 12:18-

22  13:7.)  Mr. LaNier alleges he was a "payroll employee" of the City with the title of

23  "Director of NMI," and that his position was "specifically approved by the City

24  Council of the City of Chula Vista[.]"  (*See* LaNier FAC ¶ 11; Guidance §§ 3.4.5,

25  6.8.1.)

26  //

27  //

28  //

The Court has already addressed above that similar allegations in the FAC coupled with the Guidance strongly suggest that HIDTA—the program itself and the Executive Board included—is not an employer.  Rather, within the HIDTA program, grantees of HIDTA funding are the employers of any staff needed to carry out the objectives of HIDTA.  That reasoning also applies here to Mr. LaNier.  Consequently, the Court can reasonably infer that Mr. LaNier was indeed an employee of the City of Chula Vista at all relevant times to this action as he could not have been an employee of HIDTA.

The same cannot be said for Ms. Taylor.  Though Ms. Taylor identifies Mr. Partridge, the Deputy HIDTA Director, as the wrongdoer, and the record suggests that he was an employee of the City of Chula Vista, Ms. Taylor does not allege she, too, was an employee of the City.  Instead, she alleges she was employed by CADFY as a "payroll employee working in the HIDTA joint task force office."  (Taylor FAC ¶¶ 12, 15.)  The record before the Court is devoid of anything suggesting Ms. Taylor maintained an employment relationship with the City of Chula Vista.  Therefore, the Court cannot reasonably infer from her FAC or the Guidance that Ms. Taylor was an employee of the City of Chula Vista, and as such, she cannot sustain her FEHA claim against the City.

Accordingly, the Court **DENIES** the City of Chula Vista's motion to dismiss as to the Mr. LaNier's Title VII and FEHA claims, but **GRANTS** the City's motion as to Ms. Taylor's FEHA claim.

## V.    CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS WITHOUT LEAVE TO AMEND** the Government's motions to dismiss in both the LaNier and Taylor Actions, **DENIES** the City of Chula Vista's motion to dismiss in the LaNier Action, and **GRANTS WITHOUT LEAVE TO AMEND** the City's motion to dismiss in the Taylor Action.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

1    1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where . . .

2    amendment would be futile.").   In other words, the Court **DISMISSES WITH**

3    **PREJUDICE** the Government from both the LaNier and Taylor Actions, and the

4    City of Chula Vista from the Taylor Action.

5         When the Government removed the LaNier and Taylor Actions to federal

6    court, the identified bases for subject matter jurisdiction were: (1) both actions named

7    the United States, its agencies, and officers as a defendant under 28 U.S.C. §

8    1442(a)(1); and (2) both actions involved a federal question under 28 U.S.C. §

9    1441(a).   (*LaNier* Removal Notice ¶¶ 9-12; *Taylor* Removal Notice ¶¶ 9-12.)   With

10   the dismissal of the Government in the LaNier Action, the Title VII claim remains,

11   providing a basis for subject matter jurisdiction.   However, in the Taylor Action,

12   there are no remaining federal claims.

13        With the dismissal of the Government, the Court lacks subject matter

14   jurisdiction over the Taylor Action, and it declines to exercise supplemental

15   jurisdiction over the remaining state-law claims.[7]   *See* 28 U.S.C. § 1367(c)(3);

16   *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's

17   discretion whether to exercise [supplemental] jurisdiction after dismissing every

18   claim over which it had original jurisdiction is purely discretionary.").   The Supreme

19   Court has explained that "in the usual case in which all federal-law claims are

20   eliminated before trial, the balance of factors to be considered under the

21   [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and

22   comity—will point toward declining to exercise jurisdiction over the remaining state-

23   law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see*

24   *also Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1996).

25   _____

26        [7] It is possible that the Court does not have discretion to exercise supplemental jurisdiction
     over the remaining state-law claims in the Taylor Action.  If the district court "dismisses [all federal
27   claims] for lack of subject matter jurisdiction, it has no discretion and must dismiss all [state-law]
     claims." *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).  Given
28   that the federal claim in the Taylor Action was dismissed for failing to meet certain jurisdictional
     prerequisites, it may be that the claim was dismissed for lack of subject matter discretion.

1    Ms. Taylor's remaining intentional-tort claims stem from violations of state

2  common law, and should properly be adjudicated in the state court.  *See Carnegie-*

3  *Mellon Univ.*, 484 U.S. at 350 n.7.  Accordingly, the Court **REMANDS** the Taylor

4  Action to the San Diego Superior Court.

5       **IT IS SO ORDERED.**

6

7  **DATED:  February 16, 2016**

8                                                     Hon. Cynthia Bashant
                                                      United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28